The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
July 13, 2023

### 2023COA67

**No. 22CA0857, *Dodge v. Padilla* — Government — County
Officers — Sheriff — Colorado Governmental Immunity Act —
Public Entity; Torts — Negligence; Agency — Respondeat
Superior**

A division of the court of appeals holds that (1) a sheriff's office

is a "public entity" under the plain language of the Colorado

Governmental Immunity Act (CGIA); and (2) when a sheriff's office

has waived immunity under the CGIA, the sheriff's office may be

held responsible under the doctrine of respondeat superior for its

deputies' negligent acts occurring in the scope of the deputies'

employment.

COLORADO COURT OF APPEALS                    **2023COA67**

---

Court of Appeals No. 22CA0857
Adams County District Court No. 22CV30043
Honorable Teri L. Vasquez, Judge

---

Timothy Dodge,

Plaintiff-Appellee,

v.

Jacob Padilla and Adams County Sheriff,

Defendants-Appellants.

---

ORDER AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE LUM
Dailey and Johnson, JJ., concur

Announced July 13, 2023

---

Bachus & Schanker, LLC, Scot C. Kreider, Kaylea Waechter, Denver, Colorado,
for Plaintiff-Appellee

Heidi M. Miller, County Attorney, Michael A. Sink, Assistant County Attorney,
Brighton, Colorado, for Defendants-Appellants

¶ 1        In this negligence action arising from an automobile accident, defendant, Adams County Sheriff (Sheriff), appeals the district court's order denying his motion for partial dismissal of the complaint filed by plaintiff, Timothy Dodge, on governmental immunity grounds.[1]  *See* § 24-10-108, C.R.S. 2022.

¶ 2        For the first time, we consider a challenge to the classification of a "sheriff's office" as a "public entity" under the Colorado Governmental Immunity Act (CGIA), sections 24-10-101 to -120, C.R.S. 2022.  The Adams County Attorney's Office (county attorney), who represented the Sheriff at trial and on appeal,[2] asserts that a sheriff is an officeholder only and that a "sheriff's office" is not a cognizable "entity;" therefore, certain immunity waivers that apply to public entities under the CGIA do not apply to the Sheriff in this case.  The county attorney further asserts that, even if a sheriff's office were a public entity, it cannot be held liable

---

[1] While Deputy Jacob Padilla is a defendant in the underlying action and an appellant on appeal, he is not involved in the issues presented for appeal, which concern only the Sheriff.
[2] Because this opinion will refer to the Sheriff as an official capacity defendant, as well as sheriffs in general and the sheriff's office, we will refer to the legal positions of the Sheriff as being advanced by the "county attorney."

for the negligent acts of its deputy under the doctrine of respondeat superior.

¶ 3    Because we conclude that a sheriff's office is a public entity under the CGIA and that a sheriff's office may be held liable under a respondeat superior theory, we affirm the order and remand the case to the district court for further proceedings.

## I.    Background

¶ 4    Dodge brought the underlying action to recover damages for injuries he suffered in an automobile accident with defendant Jacob Padilla, an Adams County sheriff's deputy.  Deputy Padilla was on duty, driving a patrol car allegedly owned by Adams County, when the accident occurred.  Dodge alleged, among other things, that Deputy Padilla breached his duty to use reasonable care by failing to keep a proper lookout, by failing to yield to oncoming traffic, and by operating the vehicle in a careless, negligent, and reckless manner.  Dodge additionally named the Sheriff as an official capacity defendant, asserting that the sheriff's office was also liable under the doctrine of respondeat superior.

¶ 5    The county attorney moved for partial dismissal of the complaint under C.R.C.P. 12(b)(1) for lack of subject matter

jurisdiction, asserting immunity under the CGIA.  The county

attorney argued that (1) the Sheriff is not a public entity, but rather

a public employee who is immune from liability arising out of his

acts or omissions during the performance of his duties; (2) the

Sheriff played no role in the vehicle accident, other than hiring

Deputy Padilla; and (3) respondeat superior is not available as a

theory of liability against a sheriff or a sheriff's office.  *See* § 24-10-

106(2)-(4) C.R.S. 2022.

¶ 6     The district court denied the county attorney's motion.

Relying on *Carothers v. Archuleta County Sheriff*, 159 P.3d 647

(Colo. App. 2006), the district court reasoned that Dodge had sued

the Sheriff in his official capacity; therefore, Dodge's claim is

against the Adams County Sheriff's Office, which is a public entity,

and "immunity principles applicable to suits against the state or

against public entities" — including waiver of immunity in

automobile accident cases — apply.  *Id.* at 652.  The district court's

order did not directly address the county attorney's arguments

regarding respondeat superior liability.

¶ 7     The Sheriff appeals.

## II.    Standard of Review

¶ 8    Whether governmental immunity applies to bar a suit is an issue of subject matter jurisdiction.  *Colucci v. Town of Vail*, 232 P.3d 218, 219 (Colo. App. 2009).  "As such, if raised before trial, the issue is properly addressed pursuant to a C.R.C.P. 12(b)(1) motion to dismiss . . . ."  *Corsentino v. Cordova*, 4 P.3d 1082, 1087 (Colo. 2000); *accord Colucci*, 232 P.3d at 219.  The district court's decision on such a motion is subject to interlocutory appellate review under section 24-10-108.

¶ 9    "When the jurisdictional issue involves a factual dispute, a reviewing court employs the clearly erroneous standard of review in considering the [district] court's findings of jurisdictional fact."  *Springer v. City & Cnty. of Denver*, 13 P.3d 794, 798 (Colo. 2000).  But where, as here, the relevant facts are not in dispute and the issue is one of law, an appellate court reviews the district court's jurisdictional rulings de novo.  *Tidwell v. City & Cnty. of Denver*, 83 P.3d 75, 81 (Colo. 2003); *Colucci*, 232 P.3d at 219.

¶ 10    In addition, the issues raised in this appeal concern statutory interpretation, which we also review de novo.  *See Fogg v. Macaluso*, 892 P.2d 271, 273 (Colo. 1995).  In construing a statute, our

primary task is to give effect to the intent of the General Assembly, which we do by looking to the plain language of the statute. *Elder v. Williams*, 2020 CO 88, ¶ 18. We construe words and phrases according to their common usage unless they have acquired a technical or particular meaning, whether by legislative definition or otherwise. § 2-4-101, C.R.S. 2022; *Ma v. People*, 121 P.3d 205, 210 (Colo. 2005). In addition, we must give effect to each word and construe the statute as a whole, giving its terms consistent, harmonious, and sensible effect, while avoiding an illogical or absurd result, and we must attempt to harmonize statutes relating to the same subject matter. *See Elder*, ¶ 18; *Nelson v. Indus. Claim Appeals Off.*, 981 P.2d 210, 212 (Colo. App. 1998).

### III.    CGIA Immunity and Waiver

#### A.    Legal Principles

¶ 11    The CGIA provides that "[a] public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort." § 24-10-106(1). However, immunity is waived by a public entity in an action for injuries resulting from "[t]he operation of a motor vehicle, owned or leased by such public entity, by a public employee while in the course of employment." § 24-10-106(1)(a).

¶ 12      "Because governmental immunity under the CGIA is in

derogation of Colorado's common law, we narrowly construe the

CGIA's immunity provisions, and as a logical corollary, we broadly

construe the CGIA's waiver provisions."  *Cisneros v. Elder*, 2022 CO

13M, ¶ 25 (quoting *Daniel v. City of Colorado Springs*, 2014 CO 34,

¶ 13).  "Broadly construing the CGIA's waivers of sovereign

immunity allows individuals to seek redress for injuries caused by

public entities, which is 'one of the basic but often overlooked'

purposes of the CGIA."  *Id.* (quoting *Daniel*, ¶ 13).

### B.    Analysis

¶ 13      Although a public official is a natural person, official capacity

suits are generally treated as suits against the "entity that [the

person] represents."  *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)

(quoting *Brandon v. Holt*, 469 U.S. 464, 471 (1985)); *see also State

v. Nieto*, 993 P.2d 493, 508 (Colo. 2000).  The parties do not dispute

that this case is an official capacity suit.  Rather, the county

attorney asserts that a "sheriff" is a public employee only and that

the "sheriff's office" (or "sheriff's department") is not a cognizable

"entity" for purposes of determining CGIA immunity, but instead is

6

merely a colloquial term for the collection of deputies and staff whom the Sheriff employs.

### 1.    "Public Entity"

¶ 14     While several Colorado cases state that a sheriff's office is a public entity under the CGIA, none of those cases involved a direct challenge to the classification of a sheriff's office as an "entity," and none of the issues on appeal in those cases required the divisions of this court to explain why such a classification was proper. *Carothers*, on which the district court relied, comes closest to an analysis of this issue; however, that case did not address whether a sheriff's office is an entity.  159 P.3d at 652.  Rather, the question in *Carothers* was whether the plaintiffs' claims were "(1) only against the Sheriff's Department as a public entity and the Sheriff in his official capacity as head of that entity, or (2) against the Sheriff as an individual as well."  *Id.*; *see also Podboy v. Fraternal Order of Police, Denver Sheriff Lodge 27*, 94 P.3d 1226, 1230 (Colo. App. 2004) (in determining whether conduct of law enforcement officers employed by the Denver Sheriff's Department fell within their scope of employment, the division stated: "The Denver Sheriff Department is a political subdivision of the City and County of

Denver and a public entity" under the CGIA); *Tunget v. Bd. of Cnty. Comm'rs*, 992 P.2d 650, 651-52 (Colo. App. 1999) (in respondeat superior action against the board of county commissioners for an accident caused by sheriff's deputy, the division held that the board could not be liable for the deputy's actions because the sheriff's office was responsible for the deputy and was a public entity separate from the board).

¶ 15    We therefore turn to the plain language of the statute.

¶ 16    The CGIA defines "public entity" as "the state, any county, city and county, municipality, school district, special improvement district, and every other kind of district, agency, instrumentality, or political subdivision thereof organized pursuant to law." § 24-10-103(5), C.R.S. 2022.

¶ 17    It is clear that a sheriff's office is not a state, county, city and county, municipality, school district, or special improvement district.  However, we conclude that a sheriff's office (or sheriff's department) is an "agency."

¶ 18    By use of the word "thereof," section 24-10-103(5) suggests that, for an agency to be a public entity, it must be an agency of the "state, any county, city and county, municipality, school district, or

special improvement district." But the word "agency" is not otherwise defined by the CGIA. In the absence of an express statutory definition, we interpret the term "flexibly, in accordance with common usage." *People v. Speer*, 255 P.3d 1115, 1121 (Colo. 2011). "The common definition of the word 'agency' is a division or subdivision of government." *Ma*, 121 P.3d at 207. "Division," in turn, is defined as "[a] group that does a particular job within a large organization." Black's Law Dictionary 603 (11th ed. 2019).

¶ 19    The office of the county sheriff is established by the Colorado Constitution. Colo. Const. art. XIV, § 8. "[T]he sheriff's sphere of authority essentially defines the concept of the 'sheriff's office.'" *Chavez v. Bd. of Cnty. Comm'rs*, 426 F. Supp. 3d 802, 812 (D. Colo. 2019). Sections 30-10-501 through 30-10-527, C.R.S. 2022, set forth the duties exercised by the office of the sheriff. These duties include

- appointing the undersheriff, § 30-10-504, C.R.S. 2022;

- appointing deputies and adopting personnel policies in connection therewith, § 30-10-506, C.R.S. 2022;

- keeping "charge and custody of the jails of the county" and supervising the jails "himself or herself or through a deputy or jailer," § 30-10-511, C.R.S. 2022;

- responsibility for the "coordination of fire suppression efforts," §§ 30-10-512 to -513, C.R.S. 2022;

- transporting prisoners to a correctional facility, § 30-10-514, C.R.S. 2022;

- "serv[ing] and execut[ing] . . . processes, writs, precepts, and orders issued or made by lawful authority," § 30-10-515, C.R.S. 2022; and

- along with the deputies, "keep[ing] and preserv[ing] the peace in their respective counties," § 30-10-516, C.R.S. 2022.

¶ 20    The legislative scheme defining the duties of the office of the sheriff demonstrates that it is unquestionably (1) a group — comprising the sheriff, undersheriff, and deputies (and ostensibly any administrative or support staff); (2) that does a particular job — performing law enforcement and public safety functions; (3) within

a large organization — the county.  In short, the sheriff's office is a division of government, making it an "agency."[3]

¶ 21    This notion of the sheriff's office is consistent with the common understanding that a sheriff's office is a "law enforcement agency," as that term is defined in other statutes.  For example, section 26-1-114(3)(a)(III)(B), C.R.S. 2022, defines "law enforcement agency" as "any agency of the state or its political subdivisions that is responsible for enforcing the laws of this state.  'Law enforcement agency' includes but is not limited to any police department, *sheriff's department*, district attorney's office, the office of the state attorney general, and the Colorado bureau of investigation." (Emphasis added.)  *See also* §§ 24-32-124(1)(e), 24-32-3501(8)(f), 24-33.5-115(4)(b)(III), 24-35-120(4)(b)(III), 29-5-112(3)(d), 30-10-526(4)(b)(III), 31-30-108(4)(b)(III), 33-9-112(4)(b)(III), C.R.S. 2022 (all defining "law enforcement agency" to include "a county sheriff's office").

---

[3] Having determined that a sheriff's office is an "agency," we need not decide, and express no opinion about, whether a sheriff's office might also be considered an "instrumentality" or a "political subdivision" under section 24-10-103(5), C.R.S. 2022.

¶ 22        We next consider, and reject, each of the county attorney's
arguments regarding the definition of "public entity."  First, the
county attorney asserts that, as an elected constitutional official,
the Sheriff is an individual and therefore a "public employee" for
purposes of the CGIA.  The CGIA defines "public employee" as "an
*officer*, employee, servant, or authorized volunteer of the public
entity, whether or not compensated, elected, or appointed."  § 24-
10-103(4)(a) (emphasis added).  We agree that, as a county officer,
the Sheriff himself can be classified as a "public employee."
However, we see no reason why this precludes the sheriff's office
from being classified as a "public entity."

¶ 23        Second, the county attorney argues that an "entity" must be
organized pursuant to law, and "[n]o such legislative act . . . exists
as to constitutional county officials individually, or their
'departments' or 'offices' collectively."  In essence, the county
attorney contends that, to qualify as a "public entity" under the
CGIA, the General Assembly must establish in the statute for the
officeholder — i.e., the Sheriff — an *office or organizational structure*
distinct from the officeholder's *position*.  The county attorney
asserts that the statutory provisions outlining the duties of the

Sheriff are insufficient, and statutory references to an "office,"
"department," or "agency" do not convert the "office of the sheriff"
into a cognizable "entity."

¶ 24    Instead, contends the county attorney, any statutory reference
to the sheriff's "office" is merely a colloquial term for the Sheriff's
deputies and staff.  Indeed, the county attorney compares a sheriff's
office to a "loosely formed group" and an "unincorporated
association."  We disagree.  As set forth above, sections 30-10-501
through -527 are dedicated to duties and responsibilities of county
sheriffs and the operations of their offices.  Far from being "loosely
formed," sheriffs' offices are required to adhere to specific statutory
mandates relating to the employment of their deputies.  *See* § 30-
10-525(1), C.R.S. 2022 ("[A] sheriff's office that employs, employed,
or deputized . . . a peace officer who applies for employment with
another Colorado law enforcement agency" shall make certain
disclosures to the hiring agency.); § 30-10-526(1) ("[A] sheriff's office
shall require each candidate . . . who has been employed by another
law enforcement agency . . . to execute a written waiver" authorizing
their former employer(s) to disclose the applicant's employment
files.).  Additional regulations govern the approval of salaries, pay

13

schedules, and fee reimbursements for undersheriffs and deputies.[4]

*See* § 30-2-106, C.R.S. 2022.

¶ 25    Third, the county attorney asserts that a "sheriff's office" is not

an entity that is capable of suing or being sued.  But many recent

cases demonstrate otherwise.  Whether captioned as a suit against

the "sheriff's office" or an official capacity suit, sheriffs' offices have

been sued in the labor and employment context, *Elder v. Williams*,

2020 CO 88, *Cummings v. Arapahoe Cnty. Sheriff's Off.*, 2021 COA

122; for wrongful death, *Duke v. Gunnison Cnty. Sheriff's Off.*, 2019

COA 170; for denying a concealed carry permit, *Seguna v. Maketa*,

181 P.3d 399 (Colo. App. 2008); in replevin actions, *Woo v. El Paso*

*Cnty. Sheriff's Off.*, 2020 COA 134, *aff'd on other grounds*, 2022 CO

56; for civil rights violations, *Sebastian v. Douglas County*, 2016 CO

13; and for records requests, *Freedom Colo. Info., Inc. v. El Paso*

*Cnty. Sheriff's Dep't*, 196 P.3d 892 (Colo. 2008).

---

[4] We also note that the Adams County Sheriff's Office (ACSO) offers
benefits to its employees, such as the "ACSO Employee Assistance
Program," short term disability insurance, and life and accident
insurance, which are incongruous with the argument that a
sheriff's office is a collection of individuals rather than an entity.
Adams Cnty. Sheriff, *Adams County Sheriff's Office Employee
Benefits*, https://perma.cc/3YUF-6LGY.

¶ 26     Moreover, section 30-10-522, C.R.S. 2022 provides as follows:

> [I]n an action brought against a sheriff for an
> action done by virtue of the sheriff's office, if
> the sheriff gives notice thereof to the sureties
> on any bond of indemnity given by the sheriff,
> the judgment recovered therein shall be
> sufficient evidence of the sheriff's right to
> recover against such sureties, and the court,
> on motion, upon notice of five days, may order
> judgment to be entered against them for the
> amount so recovered, including costs.

As the federal district court noted in *Chavez*, "the Colorado Legislature would not need to specify how a sheriff may recover on his or her indemnity bond 'in an action brought against a sheriff *for an action done by virtue of the sheriff's office*' if no such action could be brought against the sheriff." 426 F. Supp. 3d at 810 (emphasis added) (quoting § 30-10-522).

¶ 27     The county attorney relies on case law interpreting federal civil rights actions under 42 U.S.C. § 1983 to support the contention that a sheriff's office is not an entity capable of suing or being sued. Section 1983 imposes liability on "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of [Constitutional rights]." 42 U.S.C.

§ 1983. The United States Supreme Court has concluded that, as used in § 1983, the word "person" may include "municipalities and other local government units" under certain circumstances. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

¶ 28    We note that judges within the federal District of Colorado appear to be divided as to whether a sheriff's office is a legally cognizable entity for purposes of § 1983 litigation. *See Coates v. Adams Cnty. Sheriff's Off.*, Civ. A. No. 20-cv-01936-STV, 2022 WL 4493972, at *14 (D. Colo. Sept. 27, 2022) (collecting cases on both sides of the debate).[5] Some cases hold that it is, while others hold

---

[5] *Coates* involved a 42 U.S.C. § 1983 suit against the Adams County Sheriff in his official capacity and the Adams County Sheriff's Office regarding an allegedly unlawful employment action undertaken by the sheriff's office. *Coates v. Adams Cnty. Sheriff's Off.*, Civ. A. No. 20-cv-01936-STV, 2022 WL 4493972, at *13 (D. Colo. Sept. 27, 2022). There, the defendants asserted that a suit against the sheriff in his official capacity was equivalent to a suit against Adams County, and that Adams County could not be held responsible because it did not control the employment decisions of the sheriff's office. *Id.* At the same time, the defendants argued that the sheriff's office "is not a legal entity subject to suit." *Id.* "Thus, according to Defendants, no governmental entity would be liable under Section 1983 when a Colorado Sheriff violates an employee's constitutional rights through an unlawful employment action." *Id.*

This is similar to the position the county attorney has taken in this litigation. In an earlier phase of these proceedings, the county attorney asserted that Adams County was not a proper defendant

that the sheriff's office is indistinguishable from the county,

rendering the county the more appropriate governmental defendant.

*Id.* (collecting cases).

¶ 29　　But whether a sheriff's office is an entity that may be sued

under § 1983 is not before us.  And even if the sheriff's office is not

liable under that federal statute, the statutory definition of a "public

entity" under the CGIA is much more expansive than the definition

of a "person" under § 1983, even as broadened by *Monell*.[6]  *See,*

---

because sheriffs' deputies are employees of the sheriff and not the
county.  Once the Sheriff was added as a party and Adams County
was dismissed, however, the county attorney asserted that the
sheriff's office cannot be sued because it is not a legally cognizable
entity.  As with the § 1983 action, these twin contentions potentially
create a situation where *no* governmental entity could ever be held
responsible for the actions of sheriffs' deputies in the course of their
employment, regardless of the CGIA's immunity waivers.

　　Significantly, the federal district court judge presiding over
*Coates* roundly criticized this approach.  While recognizing the split
in authority regarding whether the sheriff's office or the county is
the proper § 1983 entity defendant, the court noted that no court
"ha[s] allowed the type of municipal-liability loophole that
Defendants seek to create here.  Such a result would unfairly
punish Plaintiffs for the legal uncertainty, despite their viable
municipal liability claims."  *Id.* at *14.

[6] *Monell* describes the potential realm of § 1983 entity defendants in
relatively narrow terms: "municipalities," "local government units,"
"local government[s]," and "governing bodies."  *Monell v. Dep't of
Soc. Servs.*, 436 U.S. 658, 690-95 (1978).  In contrast, the CGIA
also includes school districts, agencies, political subdivisions, and
instrumentalities.  § 24-10-103(5).

*e.g.*, *Gomez v. JP Trucking, Inc.*, 2022 CO 21, ¶ 32 ("As we have explained, while 'federal precedent is persuasive in construing similar language in our [state] law, we should first look to the plain language of the controlling statutes under our law.'" (quoting *Rosenthal v. Dean Witter Reynolds, Inc.*, 908 P.2d 1095, 1100 (Colo. 1995))); *Freedom Newspapers, Inc. v. Tollefson*, 961 P.2d 1150, 1155 (Colo. App. 1998) (declining to consider federal cases interpreting the Freedom of Information Act (FOIA) as persuasive because FOIA and the Colorado Open Records Act differ).

¶ 30    Fourth, the county attorney argues that "[i]f the office was an entity that continues in existence, no substitution would be needed" when the elected head of the office changes.  But public entities are routinely sued by means of official capacity suits that would require substitution of the officeholder when a new person is elected or appointed to that position.  For example, in *Ainscough v. Owens*, 90 P.3d 851, 858 (Colo. 2004), Governor Owens was named as a defendant in his official capacity, and the supreme court determined that "[f]or litigation purposes, the Governor is the embodiment of the state."  *Id.*  It is undisputed that the State of Colorado is a "public entity" for purposes of the CGIA; yet if a new

governor took office during the pendency of an official capacity case, substitution would be a matter of course once the relevant government attorney filed the notice of the new official or appointed officer pursuant to C.R.C.P. 25(d). The same is true here. We reject the argument that a sheriff's office ceases to exist as an entity at the expiration of the sheriff's term simply because a new head of office takes office.

¶ 31    Fifth, the county attorney asserts that Adams County will no longer have a duty to indemnify the Sheriff or any other county employee under section 24-10-110(1), C.R.S. 2022, if the sheriff's office is treated as a public entity. Section 24-10-110(1) provides that a "public entity shall be liable for . . . [t]he costs of the defense of any of its public employees . . . [and] [t]he payment of all judgments and settlements of claims against any of its public employees." However, even assuming (without deciding) that the county attorney is correct about the effect of our holding on section 24-10-110(1), Adams County is nevertheless required to pay any money judgment "against any county officer in an action prosecuted by or against him *in his official capacity or name of office*" through the levy of a property tax or from "the ordinary county fund." § 30-

19

25-104(1), C.R.S. 2022 (emphasis added).  Thus, the Sheriff does not lose indemnification from Adams County by virtue of the sheriff's office being sued as a public entity.

¶ 32    Similarly, the county attorney asserts that treating a sheriff's office as a public entity "may undercut the indemnification rights of sheriff's deputies" under section 29-5-111, C.R.S. 2022.  But we are unable to see how that could occur.  Section 29-5-111 requires a county to "indemnify its paid peace officers."[7]  Nothing in that section suggests that a deputy's ability to obtain indemnification from a county is affected in any way by the classification of a sheriff's office as a "public entity."

## 2.    Absurd Results

¶ 33    Finally, concluding that a sheriff's office is not a "public entity" for purposes of the CGIA would lead to absurd results.

¶ 34    Under the CGIA, a public entity's sovereign immunity from tort liability is waived in an action for injuries arising from (1) "[t]he operation of any . . . jail by such public entity" and (2) "[a] dangerous condition of any . . . jail . . . maintained by a public

---

[7] A deputy sheriff is a "peace officer."  *See, e.g.*, § 16-2.5-103(1), C.R.S. 2022.

entity."  § 24-10-106(1)(b), (e).  There are two types of jails authorized in Colorado: county jails and municipal jails.  *See* § 17-26-101, C.R.S. 2022 (providing for a jail in each county); § 31-15-401(1)(j), C.R.S. 2022 (authorizing the creation of municipal jails). Pursuant to section 30-10-511, "the sheriff shall have charge and custody of the jails of the county."  If a sheriff's office is not a public entity, then no entity could be held liable for an injury arising from the operation of, or dangerous conditions at, county jails, and the waiver provided for in sections 24-10-106(1)(b) and 24-10-106(1)(e) would be rendered meaningless for county jails.  But a municipality could be held liable if the same injury occurred at a municipal jail. This creates an arbitrary distinction whereby a plaintiff's ability to obtain relief depends on whether the injury occurred at a municipal jail or county jail.  No statutory language suggests that the legislature could have intended such a result.

¶ 35     Moreover, the county attorney's interpretation would endanger the status of sheriffs' deputies as public employees under the CGIA. Recall that a public employee is defined as "an officer, employee, servant, or authorized volunteer *of the public entity*."  § 24-10-103(4)(a) (emphasis added).  The county attorney asserts in his

appellate briefing that sheriffs' deputies are employees of the sheriff and not the county.[8]  However, if that is the case and a sheriff's office is not a public entity, then sheriffs' deputies are not "employee[s] . . . of the public entity" and therefore are not "public employees" entitled to immunity from liability under the CGIA.

¶ 36    Apparently recognizing this problem, the county attorney asserts that the CGIA nevertheless grants immunity to sheriffs' deputies because section 24-10-118(2)(a), C.R.S. 2022, grants immunity to public employees from claims for injury brought "pursuant to . . . section 29-5-111."  But while section 29-5-111 requires a county to indemnify its paid peace officers from tort liability arising from the scope of their employment, it does not separately grant *immunity* from liability, and it does not alter the plain language of section 24-10-118(2) restricting the grant of immunity to "public employees."  We decline to interpret the CGIA in a way that arbitrarily excludes sheriffs' deputies from the grant of

---

[8] We express no opinion as to whether a sheriff's deputy may also be considered an employee of the county in which the deputy performs law enforcement duties.

immunity enjoyed by other law enforcement officials — including the Sheriff himself as a county officer.

### IV.   Respondeat Superior

¶ 37    The common law doctrine of respondeat superior establishes that "an employer is liable for the torts committed by an employee . . . while acting within the scope of his or her employment." *Perkins v. Reg'l Transp. Dist.*, 907 P.2d 672, 674 (Colo. App. 1995).

¶ 38    The county attorney contends that, even if the sheriff's office is a public entity for which immunity is waived, it cannot be sued under the doctrine of respondeat superior.  The county attorney argues that (1) prior Colorado cases assigning respondeat superior liability to sheriffs' offices did so under statutory language that is no longer in effect; and (2) the common law did not permit a claim against sheriffs for the negligence of their deputies, and "the CGIA does not create or recognize a respondeat superior claim against" county sheriffs.  Thus, asserts the county attorney, respondeat superior is not available to Dodge as a theory of liability.  We disagree.

¶ 39    Like the county attorney, we recognize that prior cases from divisions of this court holding that a sheriff's office may be liable for the actions of its deputies appear to base the sheriff's liability on a previous version of section 30-10-506, which stated: "Each sheriff may appoint as many deputies as he may think proper, *for whose official acts and those of his undersheriff he shall be responsible*, and may revoke such appointments at his pleasure." § 30-10-506, C.R.S. 2005 (emphasis added); *see, e.g.*, *Tunget*, 992 P.2d at 651-52.  In 2006, however, the General Assembly amended section 30-10-506 to remove the phrase "for whose official acts and those of his undersheriff he shall be responsible."  Ch. 43, sec. 1, § 30-10-506, 2006 Colo. Sess. Laws 133.  Thus, it is reasonable to assume that the legislature intended to eliminate section 30-10-506 as a basis for finding sheriffs liable for their deputies' acts.

¶ 40    However, the removal of statutory liability does not necessarily mean that respondeat superior is unavailable against a sheriff's office under the CGIA.

> [W]hile on the one hand the purpose of the CGIA is to protect the public against unlimited liability and excessive fiscal burdens, its purpose on the other hand, "is to allow the common law of negligence to operate against

> governmental entities except to the extent it
> has barred suit against them."

*Medina v. State*, 35 P.3d 443, 453 (Colo. 2001) (quoting *Walton v. State*, 968 P.2d 636, 643 (Colo. 1998)).  Thus, the common law doctrine of respondeat superior should apply to a public entity in circumstances where governmental immunity is waived.

¶ 41    Nevertheless, the county attorney asserts that the common law did not permit a claimant to hold a sheriff liable under a respondeat superior theory.  In support of this contention, the county attorney cites to a 1966 case, *Liber v. Flor*, for the principle that "[o]rdinarily public officials cannot be held liable under the doctrine of *respondeat superior*."  160 Colo. 7, 18, 415 P.2d 332, 338 (1966).  The county attorney's argument fails to recognize that this principle was part of the common law doctrine of sovereign immunity, which was abrogated in 1971 and replaced by the CGIA.  *See Liber v. Flor*, 143 Colo. 205, 228, 353 P.2d 590, 603 (1960) (Frantz, J., dissenting) ("I can never accede to the doctrine of immunity of government from suit or liability, or to its variant that the state or its branches are 'immune from liability because the doctrine of respondeat superior [is] held to be inapplicable.  This [is]

25

a rudimentary survival of the maxim, "The King can do no wrong.""")
(citation omitted), *overruled by Evans v. Bd. of Cnty. Comm'rs*, 174
Colo. 97, 105-06, 482 P.2d 968, 972 (1971) (abrogating common
law of governmental immunity), *superseded by statute*, Ch. 323,
sec. 1, 1971 Colo. Sess. Laws 1204-18; *Springer*, 13 P.3d at 798-99
(explaining abrogation of common law doctrine and enactment of
CGIA).  Under the CGIA, "[t]he effect of a waiver of governmental
immunity is merely to allow the liability of the public entity to 'be
determined *in the same manner as if the public entity were a private
person*."  *Medina*, 35 P.3d at 454 (emphasis added) (quoting *State v.
Moldovan*, 842 P.2d 220, 225 (Colo. 1992)).

¶ 42    As relevant here, a public entity waives immunity for tort
liability in situations in which the injury resulted from "[t]he
operation of a motor vehicle, owned or leased by such public entity,
by a public employee while in the course of employment."  § 24-10-
106(1)(a).  At common law, if an employee of a private person
injured a third party while driving a vehicle in the course of their
employment, the injured plaintiff could generally hold the employer
responsible under the theory of respondeat superior.  *Suydam v. LFI
Fort Pierce, Inc.*, 2020 COA 144M, ¶ 13 ("Under the doctrine of

respondeat superior, an employer is liable for torts committed by its employee while acting within the scope of his or her employment."). And because the CGIA expressly directs courts to determine the liability of a public entity as if it were a private person where immunity is waived, we see no reason why the theory of respondeat superior is unavailable simply because the public entity employer is a sheriff's office.

## V.    Disposition

¶ 43    The district court's order is affirmed, and the case is remanded to the district court for further proceedings consistent with this opinion.

JUDGE DAILEY and JUDGE JOHNSON concur.