## UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

TIMOTHY JAMES COATES;
GENE CLAPS;
MARK MITCHELL; and
KEVIN CURRIER,

Case No. 22-1339;
22-1434

    Plaintiffs-Appellees and
    Cross-Appellants,

v.

RICHARD A. REIGENBORN, in his
official and individual capacity,

    Defendant-Appellant.

_____

On Appeal from the United States District Court
For the District of Colorado
Magistrate Judge Scott T. Varholak
Civil Action No. 1:20-cv-01936-STV

_____

## APPELLANT'S ANSWER-REPLY BRIEF

_____

Respectfully submitted,

Michael A. Sink
Adams County Attorney's Office
4430 S. Adams County Parkway,
Brighton, CO 80601
Phone: (720) 523-6116
Email: msink@adcogov.org

March 27, 2023

# TABLE OF CONTENTS

**TABLE OF CONTENTS**............................................................................ii

**TABLE OF AUTHORITIES**....................................................................v

**STATEMENT OF PRIOR RELATED APPEALS**.............................xi

**REPLY IN SUPPORT OF APPEAL**....................................................1

**INTRODUCTION**.....................................................................................1

**ARGUMENT**............................................................................................3

I.  THE DEPUTIES' JURISDICTIONAL ARGUMENT PRESUPPOSES THE OUTCOME OF THE MERITS OF THE APPEAL ...............................................3

II.  THIS COURT IN *BRISTOL* HAS ALREADY REJECTED THE DEPUTIES' ATTEMPT TO CONFLATE THE SHERIFF WITH THE COUNTY. ......................5

III.  THE DEPUTIES' THEORY OF LIABILITY WOULD GREATLY EXPAND *MONELL* LIABILITY BEYOND ITS RECOGNIZED LIMITS. ...........................11

A.  *Monell and Its Progeny Do Not Recognize the Form of Liability the Deputies Seek to Create in This Case.*.......................................12

B.  *Limiting Claims to the Sheriff in His Personal Capacity (or Granting Him Eleventh Amendment Immunity) for Personnel Decisions Does Not Insulate His Decisions from All Judicial Review or Exempt the County from Applicable Section 1983 Claims.*..........17

IV.  THE COUNTY WAS NOT SUED AND THE DEPUTIES HAVE NOT STATED A COGNIZABLE CLAIM AGAINST IT.........................................................21

    *A.    The Deputies Named the ACSO, a Non-existent Entity, in Their Complaint, Not Adams County and Attempt to Switch Grounds Again on Appeal.* ............................................................... 22

    *B.    The Sheriff Did Not Waive the ACSO's Lack of Capacity to Be Sued.* ....................................................................................... 24

    *C.    Neither the County's Settlement Offer nor the County Attorney's Representation of the Sheriff Makes the Board of County Commissioners Responsible for the Sheriff's Decision to Constructively Discharge the Deputies.* ............................................... 27

V.  IN HIS OFFICIAL CAPACITY, THE SHERIFF IS ENTITLED TO ELEVENTH AMENDMENT IMMUNITY FOR HIS CONSTRUCTIVE DISCHARGE OF THE DEPUTIES. ....................................................................................... 32

**ANSWER BRIEF** ................................................................... 37

**INTRODUCTION** ................................................................. 37

**ARGUMENT** ....................................................................... 37

I.  THIS COURT DOES NOT HAVE JURISDICTION OVER THE DEPUTIES' CROSS-APPEAL. ...................................................................... 37

    *A.    The deputies' cross-appeal does not fall within the collateral order doctrine.* ....................................................................... 38

    *B.    The deputies' cross-appeal does not fall within pendant appellate jurisdiction.* ..................................................... 41

II.  THE DISTRICT COURT DID NOT ERROR IN GRANTING SHERIFF REIGENBORN QUALIFIED IMMUNITY. ......................................... 43

**CONCLUSION** ..................................................................... 49

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**..................51

**CERTIFICATE OF DIGITAL SUBMISSION** ...................................52

**CERTIFICATE OF SERVICE** ..............................................................53

# TABLE OF AUTHORITIES

**CASES:**

*All Around Transp. v. Continental Western Ins. Co.*,
931 P.2d 552 (Colo. App. 1996) ............................................................ 30

*Am. Nat. Bank v. Nat'l Wall-Paper Co.*, 77 F. 85 (8th Cir. 1896) ............ 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................... 45

*Bd. of Cty. Comm'rs v. Davis*, 150 P. 324 (Colo. App. 1915) .................... 6

*Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397 (1997) ...................... 19

*Bender v. Williamsport Arena Sch. Dist.*, 475 U.S. 534 (1986) ............... 4

*Bennett v. Passic*, 545 F.2d 1260 (10th Cir. 1976) ................................. 14

*Big Sandy School Dist. v. Carroll*, 433 P.2d 325 (Colo. 1967) ................. 6

*Bisbee v. Bey*, 39 F.3d 1096 (10th Cir. 1994) ......................................... 41

*Bristol v. Bd. of Cty. Comm'rs*,
312 F.3d 1213 (10th Cir. 2002) ...................... 2, 3, 5, 6, 7, 8, 9, 10, 31, 35

*Chilcoat v. San Juan Cnty.*, 41 F.4th 1196 (10th Cir. 2022) ................. 32

*Cink v. Grant Cty.*, No. 15-6030,
635 F. App'x 470 (10th Cir. Nov. 27, 2015) ................................ 5, 9, 10

*City of Canton v. Harris*, 489 U.S. 378 (1989) ....................................... 12

*Couser v. Gay*, 959 F.3d 1018 (10th Cir. 2020) ................................ 20, 34

*Dixon v. People*, 127 P. 930 (Colo. 1911) ................................................. 7

*Dole v. Snell*, 875 F.2d 802 (10th Cir. 1989) .......................................... 46

*Elrod v. Burns*, 427 U.S. 347 (1976) ................................................ 43, 44

*Estate of Booker v. Gomez*, 745 F.3d 405 (10th Cir. 2014) ..................... 49

*Ex parte Young*, 209 U.S. 123 (1908) ..................................................... 20

*Familias Unidas v. Briscoe*, 619 F.2d 391 (5th Cir. 1980) .................... 35

*Farnik v. Bd. of Cty. Comm'rs*, 341 P.2d 467 (Colo. 1959) .................... 15

*Franklin v. Zaruba*, 150 F.3d 682 (7th Cir. 1998) .................................... 2

*Hefley v. Jones*, 687 F.2d 1383 (10th Cir. 1982) ..................................... 25

*Housing Authority of Kaw Tribe of Indians v. Ponca City*,
    952 F.2d 1183 (10th Cir. 1991) ............................................................ 41

*Jenkins v. City of Topeka*, 136 F.3d 1274 (10th Cir. 1998) .................... 22

*Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701 (1989) .......................... 14, 15

*Johnson v. Jones*, 515 U.S. 304 (1995) .................................................... 42

*Kentucky v. Graham*, 473 U.S. 159 (1985) .............................................. 14

*Khalik v. United Air Lines*, 671 F.3d 1188 (10th Cir. 2012) ................. 45

*Kite v. Kelley*, 546 F.2d 334 (10th Cir. 1976) ......................................... 13

*Langley v. Adams County*, 987 F.2d 1473 (10th Cir. 1993) .................... 14

*Lewis v. Clarke*, 581 U.S. 155 (2017) ................................................. 4, 31

*Lewis v. Tripp*, 604 F.3d 1221 (10th Cir. 2010) ...................................... 45

*McMillian v. Monroe Cty.*, 520 U.S. 781 (1997) ............... 5, 19, 32, 33, 34

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ................................................ 42

*Monell v. New York City Dept. of Social Services*,
    436 U.S. 658 (1978) .....................................12, 14, 15, 16, 17, 18, 41, 49

*Monroe v. Pape*, 365 U.S. 167 (1967) ...................................................... 12

*Morgan v. Willingham*, 424 F.2d 200 (10th Cir. 1970) .......................... 45

*Newton v. Lee*, 677 F.3d 1017 (10th Cir. 2012) ................................. 39, 41

*Nicholl v. E-470 Pub. Hwy. Auth.*, 896 P.2d 859 (Colo. 1995) ................ 6

*Okla. Radio Assocs. v. Fed. Deposit Ins. Co.*,
     969 F.2d 940 (10th Cir. 1992). ............................................... 22

*Orr v. City of Albuquerque*, 531 F.3d 1210 (10th Cir. 2008) ................ 28

*Owens v. Rush*, 636 F.2d 283 (10th Cir. 1980) ................................ 5, 10

*Pearson v. Callahan*, 555 U.S. 223 (2009) ............................................. 48

*Pellitteri v. Prine*, 776 F.3d 777 (11th Cir. 2015) .............................. 3, 34

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) ........................ 14, 16

*Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013) ........................... 19

*Poindexter v. Bd. of Cty. Comm'rs*,
548 F.3d 916 (10th Cir. 2008) .......................................................... 46, 47

*Richart v. Bd. of Cty. Comm'rs*, 33 P.2d 971 (Colo. 1934) ..................... 11

*Rizzo v. Goode*, 423 U.S. 362 (1976) ...................................................... 12

*Rush v. Savchuk*, 444 U.S. 320 (1980) .................................................... 31

*SCO Group, Inc. v. Novell, Inc.*, 578 F.3d 1201 (10th Cir. 2009) ........... 29

*Scott v. Harris*, 550 U.S. 372 (2007) ....................................................... 43

*Self v. Crum*, 439 F.3d 1227 (10th Cir. 2006) ........................................ 23

*Specht v. Jensen*, 832 F.2d 1516 (10th Cir. 1987) ................................... 13

*Struble v. Barger*, 261 P.2d 497 (Colo. 1953) ........................................ 35

*Swint v. Chambers Cty. Comm'n*, 514 U.S. 35 (1995) ............................... 4

*Tele-Communications, Inc. v. C.I.R.*, 104 F.3d 1229 (10th Cir. 1997) ... 44

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318 (2014) .............. 46

*Tice v. Dougherty*, 846 F. App'x 705 (10th Cir. Feb. 24, 2021) ......... 43, 44

*Towne v. Eisner*, 245 U.S. 418 (1918) ..................................................... 7

*Tunget v. Bd. of Cty. Comm'rs*, 992 P.2d 650 (Colo. App. 2000) ............. 7

*United States ex rel. JDL, Inc. v. Martinez*,
    1996 U.S. App. LEXIS 33510 (10th Cir. Dec. 24, 1996) ..................... 44

*United States v. Kennedy*, 225 F.3d 1187 (10th Cir. 2000) ................... 29

*United States v. Wolff*, 370 F. App'x 888 (10th Cir. Mar. 23, 2010) ........ 7

*Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) ........................... 20

**CONSTITUTIONS:**

Colo. Const., art. XIV, § 8 ....................................................................... 30

Colo. Const., art. XIV, § 15 ..................................................................... 36

U.S. Const., amend. 1 ....................................................................... 37, 48

U.S. Const., amend. 11 ............................................... 17, 19, 20, 32, 36

**STATUTES:**

28 U.S.C. § 1291 ..................................................................................... 39

42 U.S.C. § 1983 ........................................................................... 12, 19, 20

Colo. Rev. Stat. § 13-21-131 ........................................................... 20, 36

Colo. Rev. Stat. § 24-10-106 .......................................................... 20, 30

Colo. Rev. Stat. § 24-10-118 .......................................................... 20, 30

Colo. Rev. Stat. §§ 24-31-301 to 319 ................................................... 36

Colo. Rev. Stat. § 29-5-111 .................................................................... 30

Colo. Rev. Stat. § 30-1-104 .................................................................... 36

Colo. Rev. Stat. § 30-2-102 .................................................................... 36

Colo. Rev. Stat. § 30-10-506 ............................................................. 15, 18

Colo. Rev. Stat. § 30-11-101 ............................................................... 6, 15

Colo. Rev. Stat. § 30-11-103 ................................................................... 6

Colo. Rev. Stat. § 30-11-105 ............................................................. 21, 22

## Rules:

Fed. R. Civ. P. 4(j)(2)(B) ...................................................................... 22

Fed. R. Civ. P. 8(c)(1)........................................................................... 25

Fed. R. Civ. P. 9(a)(2) ........................................................................... 25

Fed. R. Civ. P. 12(h)(1 .......................................................................... 25

Fed. R. Civ. P. 17(b) & (d) .................................................................... 25

Fed. R. Civ. P. 21.................................................................................. 26

Fed. R. Civ. P. 25(d)........................................................................ 26, 27

Fed. R. Civ. P. 52.................................................................................. 46

Fed. R. Civ. P. 56............................................................................ 23, 28, 47

Fed. R. Evid. 408(a)(1)........................................................................... 28

## Secondary Sources:

John C. Banks, Colorado Law of Cities and Counties at 38, § 2.9 (3rd ed. 1979) .............................................................................. 11

David R. Berman, County Governments in an Era of Change (1993) ...................................................................................................... 33

Victor S. DeSantis and Tari Renner, *Governing the County: Authority, Structure, and Elections* ..................................................................... 33

Robert S. Lorch, Colorado's Government: Structure, Politics, Administration, and Policy at 75 (5th ed. 1991) ............................... 11

## STATEMENT OF PRIOR RELATED APPEALS

There are no prior or related appeals in this matter.

Former Sheriff Reigenborn replies in support of his own appeal before answering the deputies' cross-appeal.

## REPLY IN SUPPORT OF APPEAL

## INTRODUCTION

The primary thrust of the deputies' arguments on appeal is that somehow the County must be made directly liable for conduct that it–through its Board of County Commissioners–did not and legally could not control. Every established principle of Section 1983 doctrine, however, is against any such form of strict liability. To accomplish this extraordinary result, the deputies rely primarily on the shared jurisdictional boundaries of the Adams County Sheriff and Adams County, the separate quasi-governmental legal entity. Sharing a jurisdictional boundary, however, does not create some kind of transitive property of legal liability or otherwise obliterate legal forms. Added to this jurisdictional conflation, the deputies rely on caselaw that either presupposes an employment relationship between law enforcement and various forms of municipalities or relies on irrelevant indemnification duties.

1

Put simply, former Sheriff Reigenborn[1] was not an agent of the County because his power over personnel was not subject to control by the Board. There is no dispute that the Sheriff was not subject to control by the Board in this area. This Court in *Bristol v. Bd. of Cty. Comm'rs*, 312 F.3d 1213, 1218-1221 (10th Cir. 2002) (en banc), has already so held. And the deputies so concede. Prin. & Resp. Br. at 20 (Sheriff Reigenborn's "ability to fire Plaintiffs was not subject to control or review by anyone else.").

It may be that in Colorado, constitutional county officers like the Sheriff occupy a third position for certain functions–neither an arm of the State, nor an agent of the County. Some circuits have held a county sheriff need not be either entity's agent–that he acts on his own behalf in such matters. *See Franklin v. Zaruba*, 150 F.3d 682, 685 (7th Cir. 1998). Or it may be that the Sheriff, because he is subject to control by the General Assembly, is of necessity the State's agent. The Eleventh Circuit has held, for example, a county sheriff to be an arm of the state of Georgia

---

[1] Since the filing of the opening brief, plaintiff Gene Claps has been sworn in as the current Adams County Sheriff. At least two of the other plaintiffs have been rehired as deputies by Sheriff Claps.

when hiring deputies. See *Pellitteri v. Prine*, 776 F.3d 777, 782 (11th Cir. 2015). If that is likewise deemed to be the case in Colorado, the Sheriff would then have Eleventh Amendment immunity in his official capacity.

Either way, the one incorrect answer in Colorado is that the Sheriff acts as an agent of the County when he exercises his exclusive statutory power to constructively terminate deputies. *Bristol* dictates as much. Yet the district court's holding creates the possibility that the County will be made directly liable as a defendant for the former Sheriff's unilateral choice, which the County could not have controlled. The former Sheriff is and always has been the real party in interest in this case. The deputies' novel theories seek to circumvent his immunity, as their cross-appeal reveals. The Court should, therefore, reverse the district court's denial of summary judgment as to the deputies' official capacity claim against former Sheriff Reigenborn.

## ARGUMENT

### I. The Deputies' Jurisdictional Argument Presupposes the Outcome of the Merits of the Appeal

The deputies rely on two cases in opposition to former Sheriff Reigenborn' s appeal, *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 43

3

(1995) and *Bender v. Williamsport Arena Sch. Dist.*, 475 U.S. 534, 543 n.6 (1986). Prin. & Resp. Br. at 2-3. These cases, however, do little more than set forth the standard articulation of the collateral order rule in cases that fit the ordinary configuration of personal and official capacity claims. Footnote 6 in *Bender*, for example, merely notes in a routine case where an individual is sued in both capacities, a court should evaluate the right to an appeal on a capacity-by-capacity basis. *Bender*, however, did not involve the grant of qualified immunity. And neither *Bender* nor *Swint* confronted a situation like this one where the plaintiffs seek to circumvent a Sheriff's grant of qualified immunity by asking the district court to treat him either as a municipal *entity*, which he is demonstrably not, or as the agent for an entity that they acknowledge has no control over him.

Here, the real-party-in-interest analysis in *Lewis v. Clarke*, 581 U.S. 155 (2017), is the appropriate standard and the deputies do not address its impact. Under the deputies' theory, despite having qualified immunity, former Sheriff Reigenborn's motivations and conduct will be the crux of any trial. And any judgment will serve only as a substantive

4

restriction on the personnel power of county sheriffs. It will not impact the County's exercise of its own powers. It will merely make the County strictly liable for a Sheriff's personnel decisions. This Court, therefore, has jurisdiction over former Sheriff Reigenborn's appeal.

## II. This Court in *Bristol* Has Already Rejected the Deputies' Attempt to Conflate the Sheriff with the County.

At various points in their brief, the deputies rely on *Owens v. Rush*, 636 F.2d 283 (10th Cir. 1980) and *Cink v. Grant Cty.*, No. 15-6030, 635 F. App'x 470 (10th Cir. Nov. 27, 2015), to argue that the Sheriff and the Board are really just separate agents for one joint principal, the County. Prin. &  Resp. at 20-21, 46-47, 50. The deputies' reliance on *Owens* and *Cink*, however, is misplaced in light of *Bristol*, 312 F.3d 1213 (10th Cir. 2002).

To begin with the most immediate difference, Colorado is not Kansas or Oklahoma. The Supreme Court in *McMillian v. Monroe Cty.*, 520 U.S. 781 (1997), warned against presuming that each state's governmental structure is the same. In Colorado, a specific statute provides that the Board is the sole and exclusive wielder of the County's

powers, which are expressly enumerated. *See* Colo. Rev. Stat. §§ 30-11-101 & 103. In the exercise of those powers, the Board is supreme. Any attempt by the Board to delegate any of its powers to a county official is void. *See Bd. of Cty. Comm'rs v. Davis*, 150 P. 324, 326 (Colo. App. 1915). This rule is different than the one that applies to municipalities–*i.e.*, cities or districts–in Colorado, which allows for certain forms of delegation. *See, e.g.*, *Big Sandy School Dist. v. Carroll*, 433 P.2d 325, 328 (Colo. 1967). Thus, the Board is not merely an agent of the County, it is the controlling body of the County. *See Nicholl v. E-470 Pub. Hwy. Auth.*, 896 P.2d 859 (Colo. 1995). And under this framework, there is no space for the Sheriff to serve as co-agent.

In *Bristol*, this Court sitting en banc distinguished *Owens* in a case arising out of Colorado and involving the employment status of Colorado sheriff's deputies. 312 F.3d at 1215 & 1220. There the Court surveyed Colorado's constitutional and statutory provisions regarding county sheriffs and held "the County Sheriff is a distinct position, separate from the Board of County Commissioners." *Id.* at 1219. The Court then went on to hold that sheriff's deputies were not employees of the County under

either a single-employer or a joint-employer test. *Id.* at 1219-20; *see also Tunget v. Bd. of Cty. Comm'rs*, 992 P.2d 650, 652 (Colo. App. 2000).

As the deputies point out, in a footnote, the Court noted that in a generic or common sense it is possible to refer to a deputy as a "county employee," but no more so than referring to an employee of the federal judiciary as a "federal employee." *Bristol*, 312 F.3d at 1216 n.2. The Court held, however, that such common usage had no bearing on the legal issue. *Id.* It was correct to do so. *Dixon v. People*, 127 P. 930, 932 (Colo. 1911); *see also Towne v. Eisner*, 245 U.S. 418, 425 (1918) (Holmes, J.) ("A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used."); *Am. Nat. Bank v. Nat'l Wall-Paper Co.*, 77 F. 85, 92 (8th Cir. 1896) ("The law is not to be cheated by any gloss of words. It judges things by what they are in fact, and not by their names. Words are not things."); c*f. United States v. Wolff*, 370 F. App'x 888, 896 (10th Cir. Mar. 23, 2010) (observing that labels are irrelevant where there is no dispute as to the identity of "the very real person who had the task" of performing certain governmental duties).

7

More relevant to the present inquiry was the Court's assessment of the Sheriff as a potential policymaker for the County. The Court surveyed cases from other circuits and held that it was a possibility "that counties can be held liable for the misdeeds of the Sheriffs and their employees when the Sheriff is held to set 'official policy' for the county." *Bristol*, 312 F.3d at 1221.

In the next paragraph, however, the Court expressly held, "[i]n the present case, the Sheriff was not setting 'official policy' in firing" the deputy, except to the extent that requiring employees to be able to perform their jobs can be called a 'policy.'" *Id.* This last exception clause causes the deputies to argue that the Court implied that the Sheriff had made county policy, but that the policy was permissible. But that is not what the Court stated. The Court simply stated that the Sheriff had not set "official policy" at all (or at least not a meaningful one). It did not specify on whose behalf this non-policy was arguably made.

More importantly, the context of the Court's wider assessment of Colorado law makes clear that the Sheriff cannot set "County" policy as to the firing of deputies because the County is not their employer in any

sense. Among other things, the Court rejected the use of an agency or alter ego test as inapplicable to the "factual context" of firing Sheriff's deputies. *Bristol,* 312 F.3d at 1218, n.5. Then, in applying the joint-employer test, the Court rejected the argument that the County and the Sheriff "effectively constitute a single employer." *Id.* at 1220. This is an express holding of the Court and it forecloses the deputies' arguments here that attempt to merge the Sheriff into the County for the same purpose.

As for *Cink*, aside from the case being unpublished, the decision arises out of Oklahoma. Even on the merits, *Cink* does not help the deputies. Relying on *Bristol*, the district court ruled that a dispatcher was *not* a county employee, but an employee of the Sheriff. 635 F. App'x at 472. Therefore, the plaintiff could not assert a claim against the County under either the ADA or ADEA. *Bristol* held that in Colorado, Sheriff's deputies *do not* count as County employees for purposes of the ADA. On appeal, this Court held that the district court had applied the wrong test. Given that the Sheriff in Oklahoma is merely a department of the county,

this Court held the district should have applied an agency test from *Owens* instead.

Critically, what the deputies omit from their discussions of *Cink* is that the *Bristol* test, which was originally applied by the Oklahoma district court, is still good law in cases arising out of Colorado involving Sheriff's deputies, such as this one. The fact that *Bristol* applied different tests than the one used in *Owens* was a "function of the circumstances it confronted-involving multiple *separate entities* as alleged potential employers[.]" 635 F. App'x at 473 (emphasis added). In short, *Bristol*, which is an en banc decision, is the law of this circuit as to Colorado sheriff's deputies, who are employed by a sheriff, who has been held to be a "separate entit[y]" from the county. 635 F. App'x at 473.

*Bristol*'s assessment, moreover, is consistent with scholarly treatment of Colorado's governmental structure. According to Robert S. Lorch, for example, the "old system of administration prevailing in most Colorado counties" is "not one government, but six or seven minigovernments, none of which can be controlled by the county board of commissioners." Robert S. Lorch, COLORADO'S GOVERNMENT: STRUCTURE,

POLITICS, ADMINISTRATION, AND POLICY at 75 (5th ed. 1991) He goes on to give the example of the County Sheriff:

> The sheriff, as an elected official, is not subservient to the commissioners; he runs his department the way he wants, hires whom he wants (often political supporters), promotes, disciplines, and fires anybody he wants for almost any reason he or she wants. The other elected officials do likewise. Each county thus organized is a disjointed collection of tsardoms.

*Id.*; *see generally* JOHN C. BANKS, COLORADO LAW OF CITIES AND COUNTIES at 38, § 2.9 (3rd ed. 1979) (noting when the County's powers conflict with a Sheriff's powers, the County's powers must give way), *citing Richart v. Bd. of Cty. Comm'rs*, 33 P.2d 971 (Colo. 1934).

### III.  The Deputies' Theory of Liability Would Greatly Expand *Monell* Liability Beyond Its Recognized Limits.

*Monell* and its progeny reject the use of respondeat superior liability to hold a governmental entity liable for the acts of its employees. The deputies' theory goes a step beyond respondeat superior by seeking to hold a governmental entity strictly liable for the acts of a separate officer whom it neither employees nor controls. The deputies offer no legal support that allows for this remarkable expansion of *Monell* liability.

11

A. *Monell and Its Progeny Do Not Recognize the Form of Liability the Deputies Seek to Create in This Case.*

In *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978), the Supreme Court determined that a governmental entity can be found liable under 42 U.S.C. § 1983 only where the municipality itself causes the constitutional violation at issue. "It is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989), *citing Monell*, 436 U.S. at 694. There must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Id.* Moreover, the Court reaffirmed *Monroe v. Pape*, 365 U.S. 167 (1967), "insofar as it holds that the doctrine of *respondeat superior* is not a basis for rendering municipalities liable under § 1983 for the constitutional torts of their employees." *Id.* at 663, n.7; *see also id.* at 691.

In *Rizzo v. Goode*, the Supreme Court held that a Section 1983 claim could not be brought against the mayor and police commissioner of Philadelphia for the actions of particular officers unless there was some "affirmative link between the occurrence of the various incidents of police

12

misconduct and the adoption of any plan or policy by [the defendants]–express or otherwise–showing their authorization or approval of such misconduct." 423 U.S. 362, 371 (1976). "The 'affirmative link' requirement of *Rizzo* means . . . that before a superior may be held for acts of an inferior, the superior, expressly or otherwise, must have participated or acquiesced in the constitutional deprivations of which complaint is made." *Kite v. Kelley*, 546 F.2d 334, 337 (10th Cir. 1976).

In other words, "[a] supervisor is not liable under section 1983 unless an affirmative link exists between the [constitutional] deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Specht v. Jensen*, 832 F.2d 1516, 1524 (10th Cir. 1987) (reh'g en banc granted on other grounds, and judgment, but not opinion, vacated Feb. 4, 1988, 837 F.2d 940 (quotations omitted).

Here there is no affirmative link between any action of the County and the Sheriff's decision to constructively discharge the deputies. The deputies, moreover, acknowledge that there could not have been. Prin. & Resp. Br. at 20 (Sheriff Reigenborn's "ability to fire Plaintiffs was not

subject to control or review by anyone else."). Yet they seek to hold the County strictly liable for the Sheriff's actions on little more than an appeal to judicial fiat and footnote 55 of *Monell* regarding "official capacity" claims. The naming convention in *Monell*'s footnote 55, *presupposes* that the individual named is the agent of an entity. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Langley v. Adams County*, 987 F.2d 1473, 1477 n.2 (10th Cir. 1993). But *Monell* does not authorize the creation of an agency relationship out of nothing.

Naming conventions aside, *Monell* does not allow for the form of strict liability the deputies seek to impose. This Court has previously held that "[p]ersonal participation is an essential allegation in a § 1983 claim." *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). Here, however, the County could not have done anything differently to prevent the deputies' constructive discharge. There is simply no County conduct upon which to pass judgment.

As for *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 n.12 (1986), even assuming footnote 12 is now binding after *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701 (1989), it does not close the gap the deputies need it

14

to in order to support their theory of liability. No one disputes that the State can convey authority to a sheriff by statute. No one disputes that it has done so here in Colo. Rev. Stat. § 30-10-506. Whether this authority is characterized as "legislative" or "policy-making" is not the point. The point is that the State has not delegated *the County's* authority to the Sheriff. If it is a delegation, it is a delegation of the *State*'s power.

Contrary to the deputies' reliance on *Jett*, nothing in *Jett* states or implies that a *county*'s policy-making authority is "conferred by 'state … positive law'" on a Sheriff for purposes of *Monell*. *Contra* Prin. & Resp. Br. at 42. In Colorado, the *County* has never had this authority. Nothing in Colorado constitutional or statutory law makes the hiring or firing of deputies a *County* power or function. The County's statutory powers are silent on it. *See* Colo. Rev. Stat. § 30-11-101. For Colorado counties, statutory silence is prohibitive on its face. *See Farnik v. Bd. of Cty. Comm'rs*, 341 P.2d 467, 473 (Colo. 1959). In other words, Section 506 is an act of direct authorization to the Sheriff by the State.

Footnote 12 in *Pembaur*, moreover, establishes more than the deputies acknowledge. The Sheriff grants that the footnote has been

construed to allow various boards of county commissioners in various states to reserve authority on employment decisions and thereby deprive a sheriff of policymaking or decision-making authority as to the termination of a deputy. The Sheriff also allows that there is no evidence in this case that the Board has done similarly. Yet that is not all that footnote 12 establishes. Footnote 12 starts with the assumption that in some circumstances a county sheriff will have discretion to hire and fire employees *and still not set county policy*. 475 U.S. at 483, n.12. Even reading the footnote narrowly as the deputies do, the mere possibility that a board might reserve such authority establishes that a county's liability is determined based on *the board*'s conduct, not based on an assumed strict liability imputation of a sheriff's unilateral employment decision. *Contra id.* ("[O]nly that body's decisions would provide a basis for county liability."). But that is the form of liability the deputies need in order for their claim to proceed against the County. *Monell*, however, does not allow for that kind of imputation.

### B. Limiting Claims to the Sheriff in His Personal Capacity (or Granting Him Eleventh Amendment Immunity) for Personnel Decisions Does Not Insulate His Decisions from All Judicial Review or Exempt the County from Applicable Section 1983 Claims.

The deputies argue (somewhat against their own long-term interest) that exempting the Sheriff from *Monell* liability in this case or providing the Sheriff with Eleventh Amendment immunity raises the specter of insulating Sheriff-made policy from judicial scrutiny in affairs ranging from traffic stops to the running of the county jail, or more broadly, "insulat[ing] counties" from Section 1983 liability altogether. Prin. & Resp. Br. at 51-53.

In the first instance, the Sheriff's *Monell* argument is distinct from his assertion of Eleventh Amendment immunity. The Court need not reach the second issue, provided it holds the Sheriff can only be named in his personal capacity on the facts of this case. Stated differently, there is a distinction between *Monell*'s authorization of claims for policy-based violations and *Monell*'s naming convention in footnote 55. *Monell*'s naming convention merely allows a pass-through claim that is meant to allow plaintiffs to name the governmental actor in front of them when

17

they might not know the identity of the policymaker who put those actors there. In future cases, policy-based claims will still be fully available in one of two configurations: (1) naming a deputy in his or her official capacity under *Monell*, when a policy decision of the Sheriff was actually at issue; or (2) naming the Sheriff in his personal capacity for his own policymaking decisions. Both of those paths are fully consistent with established *Monell* practice. The Sheriff argues for nothing more.

Here, in contrast, the deputies want to create an artificial third category, not because they do not know who the policymaker is, but because they do know—and they want to circumvent the effect of qualified immunity for his actions. To do this, they asked the district court below and now this Court on appeal to engage in an act of creative judicial fiat— to imagine that the Sheriff really was acting as an agent of the County all along. And to do this, they ask the Court to simply ignore that the separate legal entity of the County was not involved in the decision to send the deputies their Section 506 notices, nor possessed the legal authority to do so.

As for the County itself, it is not "insulate[d]" from Section 1983 liability. It still remains squarely subject to it, provided that it is actually sued for its own or its own agents' actions. Here, however, nothing the County did (or could have done) was the moving force behind the deputies' constructive discharge. *See Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 399 (1997) ("Congress did not intend to impose liability on a municipality unless deliberate action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights.").

As for the applicability of the Eleventh Amendment, it is not a policy-based determination. It is a constitutional and jurisdictional bar. U.S. Const., amend. 11; *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013). It applies or it doesn't regardless of the impact on the availability of a particular form of litigation involving a Sheriff's particular job function. This case only involves one function of the Sheriff–the hiring and firing of deputies. Whether in a later case a court finds a Colorado sheriff's law enforcement function or jail-keeping function to be protected by the Eleventh Amendment is an issue for

19

another day. *See McMillian*, 520 U.S. at 785 (immunity should be assessed "in a particular area, or on a particular issue"); *Couser v. Gay*, 959 F.3d 1018, 1028 & ns. 16 & 17 (10th Cir. 2020) (distinguishing cases involving a Kansas sheriff's law enforcement function, on one hand, from the sheriff's judicial enforcement and *personnel* functions, on the other).

What is more, just because a Colorado sheriff's personnel power is protected by the Eleventh Amendment from a Section 1983 claim, it does not follow that a terminated deputy could not assert a claim against the sheriff. Depending on the allegations, it might fall under Colorado's civil action for the deprivation of state constitutional rights, Colo. Rev. Stat. § 13-21-131(1), or as a common law breach of contract claim, or as a tort claim, if authorized by the Colorado Governmental Immunity Act, Colo. Rev. Stat. § 24-10-106 & 118 (waiving immunity for certain categories of claims and for willful and wanton conduct). As for federal constitutional standards, injunctive relief remains available to compel compliance with federal standards. *See*, *e.g.*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989); *Ex parte Young*, 209 U.S. 123 (1908). The plaintiffs here are really arguing about a particular form of *remedy*–monetary

20

damages in excess of Colorado's statutory caps and attorney's fees. That is not the same thing, however, as insulating a governmental actor's decisions from judicial review.

## IV. The County Was Not Sued and the Deputies Have Not Stated a Cognizable Claim Against It.

To name the County under a *Monell* theory, the deputies were obligated to name the County in the caption pursuant to Colo. Rev. Stat. § 30-11-105. They did not do so. Even if the deputies had complied with the necessary statute, the deputies did not make any allegations in their complaint regarding overt conduct by the County. This is because they intended to sue the "Adams County Sheriff's Office" (ACSO), which they still contend is a separate entity from the County, even though it is not a juridical entity capable of being sued. When the Sheriff pointed this out at summary judgment, the deputies argued the County was really the defendant, but in a brief alternative argument. By adopting this belated fallback position at summary judgment, the district court welded the County Sheriff onto a separate legal entity in a way inconsistent with state law. Now on appeal, the deputies attempt to reassert the ACSO as the proper defendant, but without having cross-appealed the issue.

21

### A. The Deputies Named the ACSO, a Non-existent Entity, in Their Complaint, Not Adams County and Attempt to Switch Grounds Again on Appeal.

The deputies begin by arguing that the naming requirement of Colo. Rev. Stat. § 30-11-105 is not jurisdictional because it is a state law requirement. Prin. & Resp. Br. at 56.

To the contrary, the statute is made jurisdictional under F.R.C.P. 4(j)(2)(B). *See Jenkins v. City of Topeka*, 136 F.3d 1274, 1275 (10th Cir. 1998) ("Effectuation of service is a precondition to suit."). Without proper service, the Court lacks personal jurisdiction over a defendant. *Okla. Radio Assocs. v. Fed. Deposit Ins. Co.*, 969 F.2d 940, 943 (10th Cir. 1992). The County did not appear and neither the Sheriff, nor the non-existent ACSO, could waive that defect on the County's behalf. And the deputies' attempt to resurrect the ACSO as a separate entity on appeal establishes that they never really sought to name the County in the first place.

Even if the Court looks past the caption to the body of the complaint, the deputies never alleged that either the "ACSO" or the County was an actor or participant in the relevant events – *i.e.*, that "it" did anything regarding their constructive discharge. The deputies'

complaint merely alleged "Defendant ACSO is the law enforcement agency of Adams County," and that "Defendant Reigenborn was and remains the elected Sheriff of ACSO, a final policymaker for ACSO, and an agent of ACSO." App. Vol. I at 20, ¶¶ 7 & 8. In response to paragraph 7, the defendants admitted only that "Sheriff Reigenborn is the elected sheriff of Adams County, Colorado and that *he and his employees* have such duties and responsibilities as are set forth in Colorado statute," and denied any allegations in paragraph 8 beyond that Sheriff Reigenborn was the elected Sheriff. App. Vol. I at 62-63, ¶¶ 7-8. In other words, no admission was made that the ACSO was a separate legal entity or that the defendants were legally employed by the "ACSO," rather than the Sheriff.

Even taking the allegations at face value at summary judgment, *contra* F.R.C.P. 56(c) & (d); *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006), neither the ACSO nor the County is alleged to have had an ulterior motive for the deputies' discharge. Neither the ACSO nor the County is alleged to have delegated authority to the Sheriff or ratified his decision making. Sheriff Reigenborn is summarily alleged to have acted on behalf

23

of the ACSO, which did no more than employ the deputies. App. Vol. I at 37, ¶ 160; 40, ¶ 172; 42, ¶¶ 185-187.

Even if ACSO was an entity, which it isn't, the deputies have not established below or on appeal that their theory rests on anything other than strict liability or respondeat superior for the ACSO. More fundamentally, the deputies' omission of any alleged conduct by the ACSO is hardly surprising because this case is and has always been about Sheriff Reigenborn's personal decision making regarding the constructive discharge of the deputies. App. Vol. I at 29-39, especially ¶¶ 96, 116, 125-135, 138-141, 143-150, 152-158. Again, the deputies' persistent quest for some alternative "entity" behind the Sheriff, whether the ACSO or the County, is transparently meant to circumvent the effect of the Sheriff's qualified immunity–not to seek redress against some other governmental actor that is alleged to have committed some concrete wrong.

### B. The Sheriff Did Not Waive the ACSO's Lack of Capacity to Be Sued.

In a footnote, the deputies argue that the "Sheriff's Office" failed to argue that it "lacks capacity or doesn't exist" in its answer or motion to

dismiss and, therefore, waived it at summary judgment under F.R.C.P. 9(a)(2). App. At 54, n. 10. How a non-existent entity can waive something, the deputies do not make clear. Regardless, the waiver argument itself was not made below. Nor, as argued above, is it being made in support of the district court's decision, which dismissed ASCO as a non-entity.

If it had been raised below, the Sheriff would have observed that the "non-existence" of a party is not an affirmative defense that must be raised in the answer. *See* F.R.C.P. 8(c)(1). Under Rule 9(a)(2), the party challenging capacity or existence "party must do so by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge," but there is no time specified to do so. Nor does F.R.C.P. 12(h)(1) include such an argument within its waiver provision if it is not included in the answer or a motion. Rule 17, moreover, contains no such deadline. *See* F.R.C.P. 17(b) & (d); *Hefley v. Jones*, 687 F.2d 1383, 1388 (10th Cir. 1982) (Rule 17 arguments involving failure to join a necessary party should be raised in a "timely" fashion and a district court did not abuse its "discretion" in denying an amendment 16 days before trial). Nor was there a basis here to dismiss the case on the grounds that

the real party in interest was not present because the Sheriff was present in the case and properly named in his personal capacity. *Accord* F.R.C.P. 25(d) ("[A]ny misnomer not affecting the parties' substantial rights must be disregarded.").

Rule 21 makes it clear that "*[m]isjoinder* of parties is not a ground for dismissing an action[,]" and that "the court may *at any time*, on just terms, add or drop a party." F.R.C.P. 21 (emphasis added); *accord* F.R.C.P. 25(d) (court may order substitution of a party in an official capacity claim "at any time"). The deputies' argument, if adopted, would eviscerate Rule 21's provision for dropping unnecessary parties. In any event, the district court exercised its discretion to consider the Sheriff's argument, which was raised at summary judgment.

Raising the interplay between the timing elements of Rules 9, 17, and 21 also presents a more fundamental dilemma for the deputies. If, as the deputies assert, Sheriff Reigenborn has a capacity other than his personal capacity for making personnel decisions, then former deputy Claps' election as the new Sheriff will automatically result in his substitution in as the remaining defendant upon remand by operation of

Rule 25(d). *See* F.R.C.P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party."). If the deputies prevail, Mr. Claps will become a named party *on both sides of the case*. To be clear, former Sheriff Reigenborn's position is that this is not necessary. Yet that is only because there is no proper official capacity claim in this case. This consequence of the deputies' theory, however, highlights its unreal or artificial nature. In other words, there is no real actor in this case other than former Sheriff Reigenborn. It is as absurd to sue Sheriff Reigenborn in his "official capacity" for his own decision as it is for former deputy Claps to now sue himself in his "official capacity" for that same action.

> C. Neither the County's Settlement Offer nor the County Attorney's Representation of the Sheriff Makes the Board of County Commissioners Responsible for the Sheriff's Decision to Constructively Discharge the Deputies.

At two points in their brief, the deputies attempt to link the County to Sheriff Reigenborn's decision to constructively discharge them. They point to evidence (some of which is outside the record on appeal) that (1) the County offered the deputies a settlement offer consisting of severance

27

money in exchange for a release of any claims, and (2) the County provides some administrative support for the Sheriff in the form of record keeping and insurance coverage. Prin. & Resp. Br. at 9, 50-51. The deputies also point to the litigation history of the County Attorney's office representing the Sheriff in the underlying litigation.

The deputies' arguments on this score suffer from several defects. First, much of the evidence cited to is inadmissible under F.R.E. 408(a)(1). Offers of settlement are not admissible when, as here, the plaintiff offers it to establish liability. *See*, *e.g.*, *Orr v. City of Albuquerque*, 531 F.3d 1210, 1218-19 (10th Cir. 2008) (excluding evidence of settlement discussions between a police officer and a police department in a subsequent suit against a city). Evidence at summary judgment must be admissible. F.R.C.P. 56(c)(2). Nor, apart from the formal bar, is it probative.

Small wonder that the deputies did not argue this below, nor did the district court consider it, which is their second problem. This is amplified by their reliance on assertions of evidence not in the appellate record. *See United States v. Kennedy*, 225 F.3d 1187, 1191 (10th Cir.

2000) (the Court "will not consider material outside the record before the [lower] court" and that the parties may not "build a new record" on appeal) (quotation omitted).

The largest problem for the deputies' new argument is that the evidence is simply irrelevant to the issue at hand. *See SCO Group, Inc. v. Novell, Inc.*, 578 F.3d 1201, 1223 (10th Cir. 2009) ("Parties may choose to settle claims for a variety of reasons unrelated to their merits, not the least to avoid expensive litigation or to maintain civility in an important commercial relationship."). The deputies complain about their constructive termination for supporting the Sheriff's opponent during the election and nothing else. *See* App. Vol. I at 23, ¶ 172 (alleging "When Defendant Sheriff Reigenborn fired Plaintiffs, or required they resign in lieu of termination, he was acting as a final policymaker and decision-maker for Defendant [the Adams County Sheriff's Office.]"). The district court held the Sheriff constructively terminated the deputies and that ruling is not challenged by either side in this appeal.

Even if it had been challenged, no one else was responsible for that decision. The very evidence now relied upon by the deputies makes it

clear that Sheriff Reigenborn was in charge of that decision. *See* App. Vol. I at 285-286. The County, through the Board of County Commissioners, did not attempt to make that decision. Nor would it have the legal authority or an incentive to do so.

As set forth more fully in the opening brief, by statute the County is required to assume the defense of elected officials and perhaps indemnify them in certain instances. *See* Colo. Rev. Stat. §§ 29-5-111; 24-10-106 & 118; *see also* Appellant's Br. at 37-40. Part of that right carries with it the right to assign counsel, which may consist of the County Attorney, who is a separate constitutional officer. *See* Colo. Const., art. XIV, § 8. Or she may designate one of her employees to do so, as she did in the case of undersigned counsel.

Regardless, that does not make the County liable for the Sheriff's actions (or any other public official whom the County Attorney may represent), any more than it does when an insurance company provides defense for an insured. *See All Around Transp. v. Continental Western Ins. Co.*, 931 P.2d 552, 555 & 556 (Colo. App. 1996) ("An injured claimant normally cannot maintain a direct action on the liability policy protecting

30

the tort-feasor," and "an insurer, by certifying to a third party that insurance is in effect covering the insured, does not make that third party an intended direct third-party beneficiary of the pertinent insurance policy."); *accord Rush v. Savchuk*, 444 U.S. 320, 328-29 (1980) (an insurer's obligation to defend and indemnify the insured was not sufficient to provide a court with minimum contacts over the defendant). The deputies offer no legal authority to the contrary. In *Bristol*, moreover, the Court noted a similar phenomenon, but attached no legal significance to it. 312 F.3d at 1216, n.3.

A duty to indemnify (or assigning an attorney to defend the case) does not make the County responsible for the underlying decision of the elected official that gives rise to the potential liability as a matter of federal law. As the Supreme Court has made clear that "[t]he critical inquiry is who may be legally bound by the court's adverse judgment, not who will ultimately pick up the tab." *Lewis*, 581 U.S. at 165. Here, former Sheriff Reigenborn's exercise of his statutory powers are at issue and his successors (including plaintiff Gene Claps) will be bound by the consequences of an adverse ruling that will restrict their statutory

powers in the future. The County's statutory powers will not be impaired or implicated at all. Again, the deputies simply ignore *Lewis* on this point.

## V. In His Official Capacity, the Sheriff Is Entitled to Eleventh Amendment Immunity for His Constructive Discharge of the Deputies.

As noted above, the Court need only confront the Eleventh Amendment immunity issue if it determines that a county sheriff who makes a personnel decision is suable in both his personal and official capacities for the same conduct or that he must be some entity's agent when he does so.

The Supreme Court has already held that county-level officers, including county sheriffs, can receive Eleventh Amendment immunity when they exercise State, rather than county powers. *See McMillian*, 520 U.S. at 785 & 793 (holding that an Alabama county sheriff was a State, not county, "policy maker" and entitled to Eleventh Amendment immunity when investigating a murder under the state's criminal code). That inquiry is not a "categorical, 'all or nothing'" one, but must be determined in "a particular area, or on a particular issue." *Id.*; *see also Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1220 n.26 (10th Cir. 2022)

(same). The Court acknowledged that "sheriffs will be characterized differently in different States[,]" even though it might be easier to adopt a uniform national standard. 520 U.S. at 795. Variation is inevitable, however, because "the nature of county government ha[s] varied historically from region to region, and from State to State." *Id.*

To provide some context, the Court then surveyed a variety of authors regarding variations in county governments. In a parenthetical, the Court singled out data regarding Alabama county government that supported its decision. Citing to a chapter in DAVID R. BERMAN, COUNTY GOVERNMENTS IN AN ERA OF CHANGE (1993), the Court took note of a table that listed "Alabama as 37th among the 50 States in the amount of discretionary authority granted to its counties."[2] *McMillian*, 520 U.S. at 795. The point of the data was that Alabama sheriffs were not agents of

---

[2] The Court cited to page 37 in chapter 3 but appears to have meant page 19 in chapter 2, Victor S. DeSantis and Tari Renner, *Governing the County: Authority, Structure, and Elections*, where Table 2.1 sits. That table was drawn, in turn, from Table 20 in a U.S. Advisory Commission on Intergovernmental Relations report entitled *Measuring Local Discretionary Authority* at 59 (1981), available online at: https://babel.hathitrust.org/cgi/pt?id=umn.31951d02881813x&view=1up&seq=1. *See* BERMAN, COUNTY GOVERNMENTS at 19 & 153. The Court relied on data from column C. *Compare McMillian*, 520 U.S. at 795.

county government in law enforcement matters because in that State, the State government delegated to the counties very little unbounded discretion. "Thus, since it is entirely natural that both the role of sheriffs and the importance of counties vary from State to State, there is no inconsistency created by court decisions that declare sheriffs to be county officers in one State, and not in another." *Id.* at 795.

A review of the same data reviewed by the *McMillian* court provides support for the conclusion that the State of Colorado has not delegated authority or discretion to Colorado statutory counties to superintend or oversee county sheriffs in the performance of their official statutory duties. Alabama counties are 37 on the list that measures by State the degree of local discretionary authority at the "count[y] only" level.[3] Florida counties (at issue in *Lucas*) rank much higher at 15. Oklahoma counties (at issue in *Couser*, 959 F.3d 1018) rank near the middle of the list at 27. Whereas, Georgia counties (at issue in *Pelliteri*) rank down at 32. Texas counties rank down at 43 and, as discussed in *Lucas*, its county

---

[3] The chart distinguishes between "Counties Only," "Cities Only," and "Composite (all types of local units)."

officials have been treated like Alabama and Georgia counties by the Fifth Circuit in *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980). Colorado counties are even further down the list than Alabama and Texas. They lie at 45 out of the 48 States with county governments.[4]

County sheriffs in Colorado are independently-elected state constitutional officers with jurisdictional limits tied to a geographic boundary. As such, they serve in a variety of roles, mostly within, but sometimes outside of that jurisdiction. *See Struble v. Barger*, 261 P.2d 497, 498 (Colo. 1953) (referring to the office of the county sheriff serving as both an "executive officer" and an "officer of the court"). The fact that county sheriffs at some point might exercise County powers (or Court powers or some other powers) does not mean that they exercise County powers when they hire and fire deputies. The question in such cases is the origin of the power relied upon.

In the context of the employment of deputies, this Court in *Bristol* has already analyzed the various provision of Colorado's constitutional

---

[4] Column C only ranks 48 States evidently because neither Connecticut nor Rhode Island had a "county only" sub-unit of local government.

and statutory provisions and held that the Sheriff relies on State-granted power that makes him separate from the County. The Sheriff's salary, moreover, is set by statute, *see* Colo. Rev. Stat. § 30-2-102, and protected by the Colorado constitution. *See* Colo. Const., art. XIV, § 15. Deputies' training requirements are set and enforced by the State's Peace Officers Standards and Training (P.O.S.T.) Board, *see* Colo. Rev. Stat. §§ 24-31-301 to 319. The Sheriff even has statutory authority to raise revenue through fees and receives money from P.O.S.T. *See* Colo. Rev. Stat. § 30-1-104; *accord* Colo. Rev. Stat. § 13-21-131(4)(b)(II). Thus, if the Sheriff is any entity's agent for purpose of hiring and firing deputies, he is the State of Colorado's agent. As such, he is entitled to immunity from suit for such claims under the Eleventh Amendment.

*    *    *    *    *

# ANSWER BRIEF

# INTRODUCTION

The deputies' cross-appeal challenges the district court's grant of qualified immunity at summary judgment to former Sheriff Reigenborn in his personal capacity. Their cross-appeal is limited to their first cause of action arising under the First Amendment. This Court, however, does not have appellate jurisdiction over the deputies' interlocutory cross-appeal. On the merits, the district court did not error in granting former Sheriff Reigenborn qualified immunity for the deputies' First Amendment claim, in part because the deputies now press a theory not advanced before the district court.

# ARGUMENT

## I. This Court Does Not Have Jurisdiction Over the Deputies' Cross-Appeal.

The deputies' style their cross-appeal as "conditional." *See* Prin. & Resp. Br. at 3. After acknowledging their simultaneous jurisdictional challenge to former Sheriff Reigenborn's appeal, they assert "[i]f this Court determines that it has jurisdiction over [the former Sheriff's] appeal, then it also has jurisdiction to hear [the Deputies'] conditional

cross-appeal[.]" *Id.* The deputies offer no legal support for this assertion apart from generally invoking the collateral order doctrine and pendant appellate jurisdiction. A review of the applicable case law, however, reveals that neither theory is available to the deputies as a matter of established case law.

### A. *The deputies' cross-appeal does not fall within the collateral order doctrine.*

In their response to this Court's December 20, 2022 order regarding appellate jurisdiction over the deputies' cross-appeal, the deputies argue this Court has contingent appellate jurisdiction over their cross-appeal "because both are appeals from the district court's qualified immunity decision." *See* Jan. 1, 2023 Memo. Br. Re: Appellate Juris. at 7. This framing, however, omits a key difference between the two appeals. One is from a *denial* of qualified immunity. The other is from a *grant* of qualified immunity.

Sheriff Reigenborn invokes the collateral order doctrine as the basis for this Court's appellate jurisdiction over the district court's effective denial of qualified immunity. To be sure, the deputies challenge the applicability of that doctrine. The crux of that dispute is the impact of the

district court's summary judgment order and the classification of the plaintiffs' remaining claims. If Sheriff Reigenborn loses on that issue, then by the deputies' concession, both appeals should be dismissed. But if Sheriff Reigenborn prevails on the classification issue and his appeal goes forward, it goes forward under the collateral order doctrine as a denial of qualified immunity. Under that theory, the district court should have extended the effect of its ruling to dismiss all claims regardless of the named capacity.

It does not follow, however, that the deputies' appeal of the district court's limited *grant* of qualified immunity to Reigenborn in his personal capacity thereby falls within the collateral order doctrine. The case law makes clear that it does not. *See Newton v. Lee*, 677 F.3d 1017, 1031 (10th Cir. 2012) ("[A]n order granting immunity is not a collateral order which is immediately appealable under 28 U.S.C. § 1291[.]") (quotation omitted). And the deputies offer no argument as to how or why that case law does not apply to their cross-appeal.

The deputies' cross-appeal does more than just oppose the Sheriff's arguments and seek to affirm the summary judgment order as written.

39

Rather, the deputies seek to move the case in the opposite direction. Their cross-appeal expressly seeks to reverse that portion of the district court's order that partially grants to Sheriff Reigenborn qualified immunity, which the Sheriff's appeal takes as its starting position. Because a third position exists between the two sides in the form of the district court's order as written, the deputies' cross-appeal is not inextricably intertwined with the issues raised by the Sheriff's appeal.

The deputies assert that district court's order "decision cannot at the same time be both an immediately appealable denial[,]" but that "[i]t must be one or the other—for both appeals." Jan. 1, 2023 Memo. Br. Re: Appellate Juris. at 3-4. Yet this ignores the different rulings or portions of the district court's order that are now being appealed. Summary judgment rulings are not inherently all or nothing affairs for purposes of interlocutory appellate jurisdiction.

Even if somehow the nature of the deputies' cross-appeal was inexplicably defined by the arguments advanced in the Sheriff's appeal (on the assumption that they are successful), then under the deputies' piggy-backing jurisdictional theory, they would be in the odd position of

appealing what then is a *denial* of an affirmative defense *to their own claims*. It is not at all clear, in that scenario, that they have standing to do so. *See Housing Authority of Kaw Tribe of Indians v. Ponca City*, 952 F.2d 1183, 1187 (10th Cir. 1991) ("a party must assert its own legal rights" to have standing). That absurdity only serves to point out that the deputies' cross-appeal is not inextricably intertwined with the Sheriff's arguments on appeal. The deputies are clearly separately appealing from that portion of the district court's grant of qualified immunity to Sheriff Reigenborn in his personal capacity, regardless of whether the Sheriff succeeds on his jurisdictional argument as to the official capacity claim.

> B. *The deputies' cross-appeal does not fall within pendant appellate jurisdiction.*

The deputies additionally argue for the application of pendant appellate jurisdiction. *See* Jan. 1, 2023 Memo. Br. Re: Appellate Juris. at 4, 7-10. Again, that argument is foreclosed by precedent. *See Bisbee v. Bey*, 39 F.3d 1096, 1102-03 (10th Cir. 1994); *see also Newton*, 677 F.3d at 1031. And again, the deputies offer no argument as to how or why that case law does not apply to their cross-appeal. In short, under no doctrine

does this Court have appellate jurisdiction to entertain the deputies' cross-appeal.

Nor does a general concern for avoiding "piecemeal appeals," Jan. 1, 2023 Memo. Br. at 5, warrant ignoring the limits of the existing appellate doctrines. *Mitchell v. Forsyth*, 472 U.S. 511, 514-20 (1985), allowed a limited interlocutory appeal for denials of qualified immunity despite acknowledging that very concern. To the contrary, allowing an interlocutory appeal in an individual case is apt to be viewed as creating a new exception for an entire class of cases. *See Johnson v. Jones*, 515 U.S. 304, 315 (1995) (declining to extend the *Mitchell* exception and observing "[w]e of course decide appealability for categories of orders rather than individual orders. Thus, we do not now in each individual case engage in ad hoc balancing to decide issues of appealability.") (citation omitted).

This Court, therefore, does not have appellate jurisdiction over the deputies' cross-appeal under either the collateral order doctrine or pendent appellate jurisdiction.

42

## II.    The District Court Did Not Error in Granting Sheriff Reigenborn Qualified Immunity.

At the heart of the deputies' challenge to the district court's order on qualified immunity at summary judgment lies a critical shift in the governing legal standard. This reframing begins with the deputies relying on caselaw regarding a district court's obligation not to resolve factual disputes at summary judgment and instead "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." Prin. & Resp. Br. at 71, *quoting Scott v. Harris*, 550 U.S. 372, 378 (2007). The deputies then assert the district court violated this precept by not "adopt[ing] Plaintiffs' version of the facts (i.e., that their jobs didn't require political loyalty) as factual foundation for answering the *legal* question of whether the right in question was clearly established." Prin. & Resp. Br. at 71.

In the first instance, the deputies did not make this argument below to the district court. *See* App. Vol. VII at 39-40. The deputies' argument on qualified immunity as to their First Amendment claim was one paragraph long and relied on *Elrod v. Burns*, 427 U.S. 347, 350-51 (1976) and *Tice v. Dougherty*, 846 F. App'x 705, 710 (10th Cir. Feb. 24, 2021).

43

Efforts to "bootstrap assertions of legal error onto issues framed in factual terms," pressed for the first time on appeal are waived. *See United States ex rel. JDL, Inc. v. Martinez*, 1996 U.S. App. LEXIS 33510, *9 (10th Cir. Dec. 24, 1996). Such is the case here. *See Tele-Communications, Inc. v. C.I.R.*, 104 F.3d 1229, 1232 (10th Cir. 1997) (waiver "rule is particularly apt when dealing with an appeal from a grant of summary judgment, because the material facts are not in dispute and the trial judge considers only opposing legal theories.").

As for the argument advanced below, *Elrod* arose out of Illinois and only generally held a retaliatory discharge claim is an available legal claim under the First Amendment. It did not find a violation of the First Amendment on the facts as alleged. As for *Tice,* it is an unpublished decision involving an Oklahoma deputy that was handed down over two years after the events that give rise to this case. The district court correctly distinguished those cases and various others in a detailed section of its order on summary judgment. App. Vol. XI at 222-229. And the deputies do not now challenge those distinctions on appeal.

Regardless, in pressing their newfound argument on appeal, the deputies do not stop to address what constitutes a "fact" for purposes of summary judgment. Facts are "the who, what, when, where, and why–that a reasonable jury could infer from the evidence presented by the parties." *Lewis v. Tripp*, 604 F.3d 1221, 1226 & 1228 (10th Cir. 2010) (affirming grant of qualified immunity in the absence of facts from the district court and distinguishing "the parties merits arguments about the content and significance of the record evidence.").

Precedent is clear that legal conclusions are not facts. Pleading a legal conclusion as a fact in a complaint does not make it so. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) ("[W]hen legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to those conclusions.'"), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Nor are court's bound to give weight to a party's legal conclusions at summary judgment. *See Morgan v. Willingham*, 424 F.2d 200, 202 (10th Cir. 1970) (legal conclusions made in an affidavit are not enough to defeat summary judgment).

45

Whether a particular job "requires political loyalty" is a legal conclusion arrived at after a determination of the existence of certain underlying facts. *See*, *e.g.*, *Dole v. Snell*, 875 F.2d 802, 805 (10th Cir. 1989) (holding in an FLSA classification case under a totality of circumstances test that "[t]he existence and degree of each factor is a question of fact while the legal conclusion to be drawn from those facts—whether workers are employees or independent contractors—is a question of law."); *see also Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 338 (2014) (noting that under F.R.C.P. 52, "[i]n general, we have treated district-court determinations as analytically more akin to a fact the more they pertain to a simple historical fact of the case, and as analytically more akin to a legal conclusion the more they define rules applicable beyond the parties' dispute.") (quotation omitted).

As for *Poindexter v. Bd. of Cty. Comm'rs*, 548 F.3d 916, 919 (10th Cir. 2008), relied upon by the deputies for the first time on appeal, this Court held no more than that a district court should evaluate "the inherent powers of the position and the actual duties performed" by the plaintiff in deciding whether the position at issue requires political

loyalty. It did not hold, as the deputies assert, that the *conclusion* of whether a plaintiff's job requires political loyalty was itself a "pure question of fact." *Contra* Prin. & Resp. Br. at 71. Nothing in *Poindexter* indicates how the district court, after having evaluated the underlying factual evidence regarding the inherent powers of position or the actual duties performed, is supposed to weigh and balance those facts in reaching a legal conclusion about whether a position requires political loyalty. This distinction is evident in *Poindexter* itself. In the same paragraph cited by the deputies, the Court went on to explain "if a significant factual dispute regarding the employee's *job duties* exists, summary judgment is inappropriate." 548 F.3d at 920. However, "if the job description and duties performed are undisputed, the district court may resolve the issue as *a matter of law*." *Id.*

Here, there was an underlying factual dispute as to the deputies' job duties. Thus, the district court was not required by F.R.C.P. 56 to adopt the deputies' legal conclusions about the significance of those disputed facts. The district court, moreover, did not have to resolve that dispute in Sheriff Reigenborn' s favor to apply qualified immunity. All

47

the district court had to assess was whether there was clearly established legal precedent that a deputy chief, deputy commander, or deputy lieutenant in Colorado *as those jobs were factually portrayed by the plaintiffs* are protected by the First Amendment from political loyalty requirements. Finding no such cases (and the deputies having offered none), the district court correctly found former Sheriff Reigenborn was protected by qualified immunity.

If adopted, the deputies' novel argument would collapse the merits of the constitutional issue into the second prong of the qualified immunity analysis–whether a right was clearly established at the time of the alleged violation. This is inconsistent the Supreme Court's observation that district courts have the option to independently evaluate either prong in any sequence, especially in cases involving the significance of state statutes. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). It is also inconsistent with the availability of qualified immunity at the pleading stage where "the precise factual basis for the plaintiff's claim or claims may be hard to identify." *Id.* at 238-39. What is more, the deputies' argument would flip the burden onto the defendant at summary

48

judgment to disprove the plaintiff's claim in order to obtain qualified immunity, contrary to *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014).

If the Court considers the issue, it should affirm the district court's grant of qualified immunity to former Sheriff Reigenborn.

## CONCLUSION

Sheriff Reigenborn is not a municipality. He is not a quasi-governmental entity. He is a natural person who held elected constitutional office as a County Sheriff. In that capacity, he hired and fired deputies pursuant to the exclusive authority granted to him by state statute. He did so to aid him in the personal performance of his other statutory duties. In that role, he was his own principal. Or at least, he was not the County's agent. In his capacity as the County Sheriff, he personally made the decision to constructively discharge the plaintiffs. By statute, no one else could do so. The district court granted him qualified immunity for that decision. Yet the district court still has ordered him to stand trial for that exact same decision while making the County financially responsible for an action it did not undertake. If

*Monell*'s prohibition on respondeat superior liability is to mean anything, *a fortiori*, it must also mean that the County cannot be made directly liable merely for the unilateral actions of an independently elected Sheriff who is not subject to control by the County. The Court, therefore, should reverse the district court's denial of summary judgment to Sheriff Reigenborn in his official capacity.

Dated: March 27, 2023.

Respectfully submitted,

*s/Michael A. Sink*
Michael A. Sink
Adams County Attorney's Office
4430 S. Adams County Pkwy
Suite C5000B
Brighton, CO 80601
Phone: (720) 523-6116
msink@adcogov.org
*Counsel for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

1.     This brief complies with the page limitation of Fed. R. App. P. 32(a)(7)(B) because this brief does not exceed 13,000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). It contains 9,851 words.

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point, Century Schoolbook.

Dated: March 27, 2023

*s/Michael A. Sink*
Michael A. Sink

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

(1) all required privacy redactions have been made per 10th Cir.R. 25.5;

(2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents; and

(3) the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, TrendMicro Apex One Security Agent version 14.0.10064, and according to those programs are free of viruses.

Dated: March 27, 2023

                                        *s/Michael A. Sink*
                                        Michael A. Sink

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2023, I caused the forgoing to be electronically filed with the Clerk of the Court using the PACER system which will send notification to all counsel of record.

*s/Michael A. Sink*
Michael A. Sink
Assistant County Attorney
Adams County Attorney's Office
4430 S. Adams County Pkwy
Suite C5000B
Brighton, CO  80601
Phone:  (720) 523-6116
Fax:  (720) 523-6114
msink@adcogov.org
*Counsel  for Defendant-Appellant*